United States District Court

for the Western District of Texas

Austin Division

Julie D. Blum )
)
5604 Southwest Pkwy., Apt. 4031 )
)
Austin, TX 78735 )
)
    Plaintiff, )
) A09CA 769SS
v. ) Civil Action No._____
)
National Security Agency(NSA) )
)
Fort George G. Meade, Maryland 20755-6000 )
)
and )
)
Office of the Director of National Intelligence(ODNI) )
)
Washington, DC 20511, )
)
    Defendants. )
)

## Complaint

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552 and Privacy Act of 1974, 5 U.S.C. § 552 for injunctive and other appropriate relief and seeking the confirmation or denial of the existence of agency records relating to the plaintiff and in the case that they exist the release of agency records improperly withheld from plaintiff by the defendants NSA and ODNI.

## Jurisdiction and Venue

2. This court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g)(5). Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g)(5).

<u>Parties</u>

3. Plaintiff Julie D. Blum is a citizen of the United States and resides in Austin, Texas.

4. Defendants NSA and ODNI are agencies within the meaning of 5 U.S.C. § 552(f).

<u>Events Inducing Plaintiff to Request Records from the NSA and ODNI</u>

<u>Plaintiff's Essay Leads to Suspected Surveillance</u>

5. I was a post-doctoral fellow in theoretical physics at the University of Texas at Austin from 2000-2003. In September-October/2003-I wrote the essay "String Theory is Invalid as a Fundamental Theory of Nature" and left it on three computers at the University of Texas at Austin after I had lost my job. This essay explained why string theory, an area of theoretical research funded by federal tax dollars, does not correctly describe the universe in which we live. Writing in my private notebooks clarified some details including the simple but subtle fact that I discovered about string theory in 2003 that invalidated string theory as an area of physics. Because it was embarrassingly simple, I had difficulty understanding how so many smart people in so many years of research had missed it. I strongly suspect that the discovery of my essay led to illegal surveillance, harassment, and distribution of writing in my private notebooks and other papers by agents authorized by U.S. government officials starting in May/2006 and continuing at present.

<u>Subtle Irregularities Lead Plaintiff to Suspect Illegal Surveillance</u>

6. <u>Computer tampering</u>:

~5/17/06: My apartment complex contained a community room with six computers available to residents. In May/2006 I always used one computer in particular. On ~5/17/06 I noticed that the physics website arxiv.org on the particular computer I used had been altered in ways that made it difficult to use. Other websites on this computer and the physics website on other computers were unchanged. There had never been any sign before this time that anyone else at my apartment complex

had accessed the physics website on any computer in the community room.

7. <u>Movement of objects inside plaintiff's home</u>:

a. On ~8/5/06 there was the unusual appearance of cigarettes, old shoes, and trash near the door of my apartment. I later noticed that two toilet bowl cleaners under my bathroom sink had been turned from facing front to facing sideways. Since I live alone, these bottles could be moved only by an intruder.

b. 10/16/06, 3/17/07-Objects in my dishwasher were moved while I was out. I always organize my dishwasher in the same pattern and noticed objects out of place on these occasions.

c. 10/21/06-A skiing magazine was moved from a pile of similar magazines sitting on a trunk to a pile of restaurant magazines beneath a dictionary on my table. The title on the magazine was "Rip Like a Pro". I had earlier torn and shredded a paper from my notebook, and the remnants were in my trash. It was my birthday and I needed to find a restaurant. When I searched through the restaurant magazines which I hadn't touched in over a year I noticed the October 2006 Skiing magazine that was displaced.

d. 6/8/07, 6/29/07, 9/7/07-On these days which were days I did my laundry the knob on the dryer was turned to exactly the amount of time I used to dry my clothes. When I dry my clothes the knob always ends in the zero position after the cycle.

e. On 6/20/07 I had placed a copy of the New York Times crossword puzzle below the magazine American Scientist on my sofa before leaving my apartment for a run. When I returned from my run, the crossword puzzle had been moved to above the magazine American Scientist.

f. On ~12/6/08 intruders moved the date on my new watch back by one day.

g. On 1/22/09, 1/30/09, 2/27/09, 5/10/09, and 8/23/09 I noticed that my clock-radio alarm which I never touch had been moved from the radio to the buzzer. I had changed my apartment lock on 1/26/09. A second alarm on my clock-radio was moved from the off position to the buzzer on 7/11/09.

<u>Tampering with plaintiff's surveillance camera</u>

h. I have a surveillance camera that detects motion, is focused on my door, and connected to a laptop computer. Numerous times this camera has detected me leaving my apartment but failed to detect my

return or vice versa. For instance, on 5/10/09 the camera showed pictures of me returning after a run but did not show the photos of me leaving.

i. On 5/2/09 a wire was pulled out of a digital converter box above my television while I was out. Many other objects in my home have been moved by intruders.

8. Illegal entry of plaintiff's car:

7/21/07-White mold on the front carpet of the passenger side of my car was scraped off. It had rained the previous day and was humid on this day so the mold could not disappear without outside interference. My glove compartment was left unlocked lending further evidence that my car was illegally entered but not by a thief.

9. Illegal tampering with plaintiff's water and possibly food:

8/10/07-I noticed a powder on the inner surface of a plastic water bottle in my refrigerator. I was frightened and poured out the water. I had some unusual physiological symptoms at that time that I had never previously experienced in my life and that I have not since experienced.

10. Several letters concerning these violations sent by first class U.S. mail were not delivered in 2007.

11. Suspicious snake possibly placed on running route to scare plaintiff:

On 6/24/07 I encountered a yellow and brown snake on the concrete surface next to the road where I run. The weather had been rainy, and the humidity was fairly high, but the pavement was dry. From internet research on Texas snakes I would guess that the most likely candidates for this snake's identity are the Western diamondback rattlesnake or gopher which seem to prefer the desert or the eastern hognose which prefers the woods or grassland near a water source.

12. Suspicious harassment in public places:

People approached me in suspicious ways at the gas station, the grocery store, the swimming pool, and other public places. On 10/31/07 I was typing an email to a lawyer in the community computer room of my apartment complex when a man I didn't know got up, looked at me, and screamed something like, "You're a whistle-blower!". After he left the physics website appeared on my screen,

and the email was deleted.

Suspected violations of computer files, hand-written notebooks, and other personal writing by journalists and others:

13. 5/17/06- Maureen Dowd of the New York Times wrote an oped with references to the tapping of a phone of her colleague "Julie" and also used the word "fishy", an evocative word in the second sentence of my essay about string theory. I read this oped at the same time I noticed the computer tampering. Several other oped writers at the NY Times wrote columns in the week starting 5/17/06 that contained language and other references that I suspected were influenced by reading my essay.

14. After ~8/5/06 I suspect that the NY Times had access to personal writing in my home. No one has plagiarized my writing, but the language and ideas of a number of writers appeared to be influenced by my most recent writing. Many examples similar to the following have strengthened this suspicion. On 10/2/08 I wrote in a personal notebook in my home, "The cluelessness of people in the NY Times media is only exceeded by their willingness to transcend moral and ethical boundaries." In the week after writing this phrase, there were several signs that someone had tampered with my personal laptop. On 10/9/08 Gail Collins wrote in the NY Times "an antiwar group whose penchant for violence was exceeded only by its haplessness".

15. Many other references to language and ideas contained in my private writing and to other objects in my home (food, drink, books, etc.) by people at the NY Times have led me to suspect that their editorial staff has access to information obtained from those who enter my home illegally, and they have exploited this information to some extent in the content of their paper. Since the end of 2006 references related to writing in my home by other journalists and some in the federal government have led me to a very strong suspicion that the illegal violations of my privacy, civil rights, and human dignity are sanctioned by people in the federal government. It is inconceivable that people at the New York Times and other prominent journalists would obtain access to my home through illegal

surveillance without an official approval from the U. S. government. The FBI and several other federal agencies have assured me that they do not hold records about me.

### Cause of Action(Privacy Act/Freedom of Information Act --Denial of Access to Records and Refusal to Confirm or Deny the Existence of Records related to the Plaintiff)

#### Denial of access to records by Defendant NSA

16. On 5/14/08 I submitted a request to the NSA under the Privacy and Freedom of Information Acts for copies of all information maintained about myself. My request was assigned the following identification number:55830. In a letter dated 5/19/08 and signed by Rhea D. Siers, Deputy Associate Director for Policy, I received a denial of my request for records and a refusal to confirm or deny the existence of records related to myself.

17. On 5/23/08 I submitted an appeal of the denial of my request for access to records to the NSA. My appeal was assigned the following identification number:3339. In a letter dated 7/2/08 and signed by John Inglis, Freedom of Information/Privacy Act Appeals Authority, I received a denial of my request for records and a refusal to confirm or deny the existence of such records. This letter cited exemptions 5 U.S.C. § 552(b)(1) and 5 U.S.C. § 552(b)(3). Sections 1.4(c) and (g) and 3.6(a )of the Executive Order 12958 were mentioned in reference to 5 U.S.C. § 552(b)(1). The statutes mentioned in reference to 5 U.S.C. § 552(b)(3) were section 6 of the National Security Act of 1959 (Public Law 86-36, 50 U.S.C. § 402), 50 U.S.C. § 403-1(i)(1), and 18 U.S.C. § 798.

#### Denial of access to records by Defendant ODNI

18. On 12/3/08 I submitted a request to the ODNI under the Privacy and Freedom of Information Acts for copies of all information maintained about myself. My request was assigned the following identification number:DP-2009-00008. In a letter dated 2/13/09 and signed by John F. Hackett, Director, Information Management Office, I received a denial of my request for records and a refusal

to confirm or deny the existence of records related to myself.

19. On 2/24/09 I submitted an appeal of the denial of my request for access to records to the ODNI. In a letter dated 3/25/09 and signed by John F. Kimmons, Lieutenant General, USA, I received a denial of my request for records and a refusal to confirm or deny the existence of such records. This letter cited subsection k(1) of the Privacy Act and exemptions 1 and 3 of the Freedom of Information Act.

<u>Exemption 1 should not be used to deny access to records</u>

20. I am a law-abiding citizen without access to classified information. I live alone and have no personal contacts engaging in political activity. The disclosure of any information obtained by surveillance of my home and activities could not reasonably be construed to pose a risk to the national security of this country. Therefore, the minimum standards for exemption 5 U.S.C. § 552(b)(1) are not met.

<u>Exemption 3 should not be used to deny access to records</u>

21. Public Law 86-36, 50 U.S.C. § 402, 50 U.S.C. § 403-1(i)(1), and 18 U.S.C. § 798 are not applicable because a) illegal surveillance and other illegal activities are not protected from disclosure and b) disclosing that an innocent person is not a target can have no bearing on legitimate activities related to genuine threats. A person who posed a genuine threat to this country would be the last person to contact and present truthful personal information to a government agency like the NSA. Furthermore, whoever has entered my home illegally, wiretapped my electronic devices illegally, and copied and disseminated my writing illegally has not hidden these activities from me so they have already exposed their methods to an unauthorized person. Therefore, the use of exemption 5 U.S.C. § 552(b)(3) to avoid disclosure of the existence or non-existence of classified records concerning myself is unjustified.

<u>Exhaustion of administrative remedies for the denial of access to records</u>

22. I have exhausted all required and available administrative remedies for obtaining the requested information.

23. I have a legal right under the Privacy and Freedom of Information Acts to know whether records about myself are maintained at the NSA and ODNI and to have access to those records if they exist, and there is no legal justification for the denial of that right by these agencies.

<u>Withholding of possible records prevents redress for severe harm to the plaintiff's life caused by illegal and unconstitutional activities</u>

24. Because of the withholding of information about possible records related to myself, I have been handicapped in trying to obtain legal redress for the severe disturbances to my life caused by the unconscionable and illegitimate surveillance activities.

25. As a result of illegitimate surveillance activities including but not limited to intrusions into my home; suspected wiretapping of my phone, television, radio, and laptop computer; a suspected camera in my home; suspected dissemination of hundreds of pages of my potential intellectual property found in handwritten notebooks and other writing to journalists at the New York Times and elsewhere, some politicians, and some physicists; and harassment such as introducing a chemical into my water; I have suffered adverse and harmful effects. These include but are not limited to mental distress, emotional trauma, embarrassment, humiliation, health problems, and lost or jeopardized present or future financial opportunities. I do not have the financial resources nor do I currently have access to legal assistance to challenge those who are violating my rights as a US citizen delineated in the Constitution and my rights as a human being enshrined in the Declaration of Independence. I am not a whistle-blower in the legal sense, but I have exposed in a gentle way tax-payer funded research that is dishonest and invalid. Some media outlets and high-profile physicists who promoted this area of research and politicians who funded it may have wanted to avoid an embarrassing scandal. Their methods to protect themselves from the possibility that the general public might be informed of their malfeasance are illegal, morally degrading, and must be challenged by a U.S. citizen who cares about human rights, the Constitution, the future of this country, and my personal well-being. If the U.S.

government can withhold records related to the violations that I have endured since May/2006 to avoid embarrassing powerful interests, then the Constitution is a meaningless document that protects only those who have friends among powerful interests. The right to privacy in one's home does not exist and personal property that could potentially generate income can be confiscated and used by the friends of powerful interests. Human rights are protected only so long as one has resources to fight the illicit activities of powerful interests or one has friends among powerful interests. Without access to information about the government's role in authorizing or carrying out these unconscionable activities, I have no means to restore my human dignity and no future as a U.S. citizen.

## Requested Relief

WHEREFORE, plaintiff Julie D. Blum requests that the Court award her the following relief:

(1) order the NSA and ODNI to immediately confirm or deny the existence of records related to the plaintiff and to disclose the requested records if they exist in their entirety to Julie D. Blum;

(2) provide for expeditious proceedings in this action;

(3) award plaintiff its cost and reasonable fees incurred in this action; and

(4) grant such other relief as the Court may deem just and proper.

Date: October 21, 2009                Respectfully submitted,

*Julie D. Blum*

Julie D. Blum

5604 Southwest Pkwy., Apt. 4031

Austin, TX 78735

(512)-358-0676

Plaintiff